The STANDARD OIL
COMPANY, Appellant,

v.

NIPPON SHOKUBAI KAGAKU
KOGYO CO., LTD., Appellee.

Appeal No. 84–1500.

United States Court of Appeals,
Federal Circuit.

Feb. 8, 1985.

Eben G. Crawford, Squire, Sanders & Dempsey, Cleveland, Ohio, argued for appellant. With him on brief was Daniel R. Cherry, Cleveland, Ohio; David J. Untener, Cleveland, Ohio, of counsel.

S. Leslie Misrock, Pennie & Edmonds, New York City, argued for appellee. With him on the brief were Rory J. Radding, New York City, and Joseph V. Colaianni, Pennie & Edmonds, Washington, D.C.

Before FRIEDMAN, RICH and DAVIS, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the final judgment of May 25, 1984 (as amended June 29, 1984)[1] of the District Court for the Southern District of Texas, Houston Division, granting appellee's motion for summary judgment and dismissing the cause of action as to Nippon Shokubai Kagaku Kogyo Co., Ltd. (Nippon),[2] on the dual grounds of laches and a bar to any recovery by reason of 35 U.S.C. § 286. We affirm on the latter ground.

*Background*

Plaintiff-appellant is an Ohio corporation and its counsel have referred to it as "Sohio." We shall do the same. This is a suit for infringement and contributory infringement of Sohio's Callahan et al. patent No. 2,941,007 ('007 patent) issued June 14, 1960, for PROCESS FOR THE OXIDATION OF OLEFINS.

The patent claims a process for making acrolein, in which process a bismuth molybdate catalyst is employed. Rohm and Haas Company and its subsidiary Rohm and Haas Texas, Incorporated (collectively R & H) have practiced the process, obtaining the catalyst from Nippon. The first use of the process by R & H was in 1973 in an experimental or pilot plant operation in Philadelphia in which a relatively small amount (about 200 pounds) of the catalyst was required. Subsequently R & H built a production plant in Texas and obtained from Nippon a large quantity of catalyst which has been described as "a full charge and one-half of catalyst" for the new Texas

---

1. This judgment was predicated on the court's Order of May 25, 1984, in the form of an opinion, rendered after oral argument by counsel for all parties on November 7, 1983. The Order is published at 223 USPQ 1118, 589 F.Supp. 264, followed by the Final Judgment.

2. Two other parties defendant were named in the complaint: Rohm and Haas Company and Rohm and Haas Texas, Incorporated. They also filed and argued motions for summary judgment of dismissal which are not involved on this appeal. The district court granted only Nippon's motion while requiring further proceedings on the motions of the other defendants.

plant. This large quantity was shipped to R & H in Texas by Nippon in July, August, and November, 1975. Operation of that Texas plant began on November 18, 1976. The record shows no sale or delivery of catalyst by Nippon to R & H after 1975 and none is alleged. This suit was commenced against R & H and Nippon on November 18, 1982, six years "to a day," as Sohio's counsel said, after the alleged infringement by R & H in Texas began by use of the Callahan process of the '007 patent.[3] Having delayed that long, Sohio counsel explained that suit was then brought because "the statute of limitations came upon us. And that is the reason we ultimately did file it." Another statement of counsel was, "We were forced by the statute of limitations to file this lawsuit against Rohm and Haas and N.S.K.K. else we would lose our right under the statute of limitations."

This so-called statute of limitations, referred to by counsel, is section 286 of the Patent Act of 1952, Title 35 U.S.C., which reads in pertinent part:

§ 286. *Time limitation on damages*

Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

It was derived from a similar provision in the prior statute, R.S. 4921, third paragraph, which read:

The court shall assess ... damages ...; but recovery shall not be had for any infringement committed more than six years prior to the filing of the complaint in the action.

About seven months after the R & H Texas plant went into production, the Callahan '007 patent expired on June 14, 1977, seventeen years after its issuance and more than five years before the commencement of this action.

### OPINION

The only act of Nippon alleged to constitute any kind of infringement of the '007

patent is the selling to R & H of catalyst for use in the Callahan process covered by the patent. The sale of catalyst does not, of course, constitute practice of the patented process and is not direct infringement. Nippon has not been charged with direct infringement but only with "inducing infringement" or "contributory infringement." See 35 U.S.C. § 271(b) and (c). There is no discussion in the briefs of what, if anything, Nippon has done other than the sale of catalyst to constitute such forms of infringement and therefore we need not discuss these sometimes difficult questions.

The determinate fact here is that all of the acts of Nippon complained of took place and were over and done with before the end of 1975. This suit was filed November 18, 1982, at least six years, nine months, and eighteen days thereafter. At that time, the '007 patent had been long expired so no prospective relief, such as injunction or a holding of infringement by sale of catalyst subsequent to June 14, 1977, is a possibility. A possible award of damages by reason of the sales already affected is the only matter to be considered. Assuming infringement, arguendo, and consequent damage, we turn now to a discussion of the effect of § 286, quoted above.

Black's law dictionary (4th Ed.1968) defines a statute of limitations thus:

A statute prescribing limitations to the right of action on certain described causes of action; that is, declaring that *no suit shall be maintained* on such causes of action unless brought within a specified period after the right accrued. Statutes of limitation are statutes of repose. [Emphasis ours.]

Reading § 286 in light of this definition shows that this statute is not a statute of limitations barring suit in the usual meaning of the term. It does not say that "no suit shall be maintained." Take, for exam-

---

**3.** Sohio's counsel conceded that any recovery for infringement of the '007 patent in the 1973

Philadelphia operation is barred.

ple, the situation of R & H in this case as it was before the district court. R & H was allegedly continuing the use of the '007 patent process. Waiting for more than six years after that use commenced did not create a bar under § 286 to the *bringing of a suit* for infringement or *maintaining* the suit. Assuming a finding of liability, the only effect § 286 has is to prevent any "recovery ... for any infringement committed more than six years prior to the filing of the complaint...." Therefore, suit could be maintained and recovery of damages could be had for infringement taking place *within* the six years prior to the filing of the complaint. This assumes, of course, no other impediment to recovery or maintenance of the suit such as application of the doctrine of laches.

■ Since § 286 cannot properly be called a "statute of limitations" in the sense that it defeats the right to bring suit, it cannot be said that the statute "begins to run" on some date or other. In the application of § 286, one starts from the filing of a complaint or counterclaim and counts *backward* to determine the date before which infringing *acts* cannot give rise to a right to recover damages.

■ With respect to Nippon, the situation is different from that of R & H. No act of Nippon within the six years prior to suit is complained of. By reason of § 286, no recovery against Nippon can be had, as the district court properly held. The complaint against it was therefore properly dismissed by the district court. Since that suffices to sustain the judgment of dismissal, it is unnecessary for us to reach the other ground relied on, laches, and we do not do so or express any opinion thereon.

■ Sohio, erroneously thinking that § 286 is a statute of limitations which would bar its *bringing* a suit against any of the defendants if not filed within six years of the date it commenced the practice of the patented process, filed its suit on the last day of the six-year period so it would not be barred. Aware of the fact that Nippon had supplied the catalyst, the sale of which is alleged to constitute induce-

ment of or contribution to the alleged infringement under § 271, at least nine months before the beginning of the six-year period, Sohio has asserted an ingenious but unsound theory by which it tries to move Nippon's acts forward in time so as to be later than the time when it mistakenly thought a limitations period was "beginning to run." It first assumes that Nippon's act of selling the catalyst was active inducement of infringement or contributory infringement and we can do the same, for the sake of argument. It then says that under the case law neither of these types of infringement can *exist* until there is a direct infringement and R & H, the direct infringer, did not start operations until November 18, 1976. From this it concludes that that is when Nippon's infringement commenced. That is like saying that the laying of an egg takes place when the egg hatches or that a sale takes place when the buyer uses the purchased product. The theory is without legal validity. If Nippon's acts ever gave rise to a liability, the liability arose *as of the time the acts were committed*, not at some future date determined by the acts of others. On the record before us, it committed no act within the period of six years preceding the filing of the complaint and therefore no recovery can be had against it for infringement.

Relying upon the statement in *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 602, 5 L.Ed.2d 592, 128 USPQ 354, 357 (1961), that "if there is no *direct* infringement of a patent there can be no contributory infringement" (emphasis in original), Sohio argues that since the alleged direct infringement by Rohm and Haas did not begin until November 18, 1976, Nippon's alleged contributory infringement also could not have begun until then, so that the alleged contributory infringement occurred within six years of the filing of the complaint. The statement in *Aro* upon which Sohio relied, however, was made in a quite different context and cannot be automatically and uncritically extended and applied to the dissimilar issue in the present case.

*Aro,* as the Court explained in *Dawson Chemical Co. v. Rohm and Haas Co.,* 448 U.S. 176, 217, 100 S.Ct. 2601, 2623, 65 L.Ed.2d 696, 206 USPQ 385, 405 (1980), was an action for contributory infringement based on the manufacture and sale of a specially cut fabric designed for use in a patented automobile convertible top combination.... The controlling issue in *Aro I* was whether there had been any *direct* infringement of the patent. The Court held that purchasers of the specially cut fabric used it for "repair" rather than "reconstruction" of the patented combination; accordingly, under the patent law they were not guilty of infringement. 365 U.S. at 340, 346 [81 S.Ct. at 601, 604]. Since there was no direct infringement by the purchasers, the Court held that there could be no contributory infringement by the manufacturer of the replacement tops.

*Accord: Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 526, 92 S.Ct. 1700, 1706, 32 L.Ed.2d 273, 173 USPQ 769, 772 (1972).

In contrast, in the present case the parties have not disputed that there was direct infringement in the operation of the 1973 pilot plant in Philadelphia and have assumed *arguendo* in determining the propriety of the grant of summary judgment that Rohm and Haas committed direct infringement in connection with the operation of the Texas plant beginning in November 1976. The alleged contributory infringement charged against Nippon was solely because of its sales and shipments of the catalyst to Rohm and Haas in 1975.

The most that *Aro* stands for in the context of this case is that, if Rohm and Haas did not directly infringe, Nippon did not contributorily infringe by supplying the catalyst to Rohm and Haas. *Aro* does not address or shed any light upon the different question in this case of when the alleged contributory infringement by Nippon which, if it occurred at all, occurred in the prior year. Section 286 in terms bars any recovery of damages for the alleged contributory infringement by Nippon because any such infringement was committed more than six years before Sohio filed its complaint on November 18, 1982.

The judgment of the district court insofar as it is predicated on § 286 is *affirmed.*

AFFIRMED.