**A. STUCKI COMPANY**

v.

**Stuart A. SCHWAM and Worthington Industries, Inc.**

**Civ. A. No. 83–5340.**

United States District Court,
E.D. Pennsylvania.

May 1, 1986.

Stephen J. Springer, LaBrum & Doak, Philadelphia, Pa., Raymond G. Hasley, Rose, Schmidt, Dixon & Hasley, E. Wallace Breisch, Pittsburgh, Pa., for plaintiff.

Richard D. Malmed, Philadelphia, Pa., for Stuart A. Schwam.

Charles C. Hileman, Philadelphia, Pa., for Worthington Industries, Inc.

## MEMORANDUM

RAYMOND J. BRODERICK, Senior District Judge.

On August 25, 1981, this Court entered judgment against Railroad Dynamics, Inc. [RDI] for damages caused by RDI's infringement of U.S. Patent No. 3,837,292 owned by A. Stucki Company [Stucki] in a related case, C.A. 76–800. *Railroad Dynamics, Inc. v. A. Stucki Company,* 579 F.Supp. 353 (E.D.Pa.1983), *aff'd* 727 F.2d 1506 (Fed.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). After Stucki was unable to recover the full amount of this judgment against RDI, Stucki commenced this lawsuit against defendants Stuart A. Schwam and Worthington Industries, Inc. [Worthington], the two 50% stockholders of RDI. In the present case Stucki alleges that Mr. Schwam and Worthington are jointly liable to Stucki for RDI's infringement of the above named patent. Stucki has filed a motion for sum-

mary judgment as to defendant Stuart A. Schwam (count one) on the ground that the undisputed facts show that Mr. Schwam is jointly liable for patent infringement as a matter of law. This Court is mindful that summary judgment is proper only where the moving party shows by competent record evidence that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. For the reasons discussed below, this Court will enter summary judgment in favor of Stucki and against Mr. Schwam on count one of the complaint.

A brief summary of the proceedings in C.A. 76–800 serves as the background for this Court's consideration of Stucki's motion for summary judgment. RDI commenced C.A. 76–800, seeking a declaratory judgment that U.S. Patent No. 3,837,292, owned by Stucki, was invalid. Stucki counterclaimed, alleging that the manufacture and sale of RDI's "Control/Master" unit infringed the Stucki patent. The uncontroverted evidence at the trial of *RDI v. Stucki* is summarized below:

The patent in suit concerns the spaced placement of a hydraulic shock absorber or "snubber" in the spring group of a railroad freight car, between the bolster and the side frame, held in place by a biasing spring so that it is normally operative only when the car is loaded and is normally inoperative when the car is unloaded. A freight car has four side frames, each of which holds two of the car's eight wheels. A freight car also has two bolsters. A bolster is a metal rod which connects the two side frames at each end of the freight car. The spring group is a group of springs, usually eight to ten in number, located between the wheels in each side frame. Each end of a bolster is attached to and rests upon the springs in the spring group of a side frame. . . .

The springs in the spring group operate in the same manner as springs in an automobile and absorb energy when the freight car is in motion. The energy absorption capacity of the springs is not

sufficient, however, to control the movement of many large freight cars, particularly when such cars are being operated at higher speeds or on railroad track that is in poor condition. In such circumstances, these large freight cars begin to rock from side to side, a phenomenon known in the railroad industry as "rock and roll". Primarily on curved track, the rock and roll motion of a freight car can become so severe that the freight car body can be lifted off the center plate upon which it rests, and one or more wheels can actually be lifted off of the track for a fraction of a second. If the wheel does not return to the track, a derailment occurs. Though this problem previously existed in the industry it became particularly acute when 100-ton capacity freight cars, 25–30% larger than previously existing cars, were introduced around 1964. (N.T. 3.109).

In order to prevent derailments due to "rock and roll", the railroad industry developed shock absorbers, or "snubbers", designed to provide added energy absorption capacity to that already supplied by the springs in the spring group. A number of companies developed friction snubbers, designed to dissipate rock and roll energy in the form of heat by bringing two pieces of metal together while the freight car was in motion. In the mid to late 1960's RDI and Stucki manufactured hydraulic snubbers that absorbed excess energy by use of the principles of hydraulics. No snubber completely absorbs all of the energy created by the rock and roll motion of a freight car, but it is claimed that hydraulic snubbers absorb a greater amount of energy then friction snubbers. Only RDI and Stucki manufactured hydraulic snubbers which were accepted in the trade in the late 1960's.

The Stucki hydraulic snubber based on the patent in suit, known as the "HS–6" snubber, is located in the spring group and designed so that it does not become engaged, or begin to absorb energy, until a freight car is loaded with freight. The HS–6 is installed in a spring group by removing one of the outboard springs of the group and replacing it with the HS–6 unit. Since the HS–6 unit is not as long as the distance between the bolster and the side frame, the unit makes use of a "biasing" spring located between the side frame and the snubber which holds the snubber in place and away from the side frame when the freight car is empty. The snubber is pressed into contact with the side frame when the car is loaded and, once pressed into contact, can begin to absorb energy.

The patent in suit, number 3,837,292, was issued to Donald Wiebe on September 24, 1974. It was based on an application [PX–3] filed April 15, 1971. This application was a continuation-in-part of application number 857,274, filed August 22, 1969 [PX–6] ("the parent application"), which was itself a continuation-in-part of application number 709,142, filed February 28, 1968 and later abandoned [PX–7] ("the grandfather application"). Figures 9–12 of the patent application, along with related specifications, were transferred without change to the patent in suit, becoming figures 5–8 of the patent in suit. The remainder of the parent application matured as United States Patent Number 3,595,350, issued to Donald Wiebe on January 27, 1971.

Plaintiff RDI has also marked an hydraulic snubber placed in the spring group, spaced so that it is engaged only when the freight car is loaded. This snubber is known as the "Control Master" (C/M) snubber. *The C/M snubber was designed and built by RDI's president, Stuart Schwam, in three weeks in the fall of 1971* (N.T. 2.38). The C/M snubber is located in the spring group in place of the center spring of the group, and is attached to the side frame and spaced from the bolster by a spring lodged between the top of the snubber and the bolster. *RDI has admitted that this device infringes the patent in suit should the patent in suit be found to be valid.*

*Railroad Dynamics Inc. v. A. Stucki Company,* 579 F.Supp. at 359–60. (emphasis added). This Court held a trial on the liability issues in C.A. 76–800 from May 19, 1980 to June 10, 1980. The jury answered a series of interrogatories, rejecting RDI's contentions (1) that the invention claimed was obvious in view of the prior art at the time of the invention and hence not patentable under 35 U.S.C. § 103, (2) that the patent failed to disclose the best mode of installing and retaining the patented device and hence was invalid under 35 U.S.C. § 112, (3) that the claims on the patent were filed more than one year after sale and use of the claimed invention, rendering the patent invalid; (4) that no supplemental oath was filed in support of the added claims which ultimately were included in the claims of the patent, and that this omission rendered the patent invalid under 37 C.F.R. § 1.67, and (5) that RDI had acquired intervening rights under 35 U.S.C. § 252 to make and sell its infringing device. However, the jury found that RDI's infringement of the Stucki patent was not willful. After the jury's answers established the validity of Stucki's patent, the parties waived a jury trial in connection with damages. From February 9, 1981 to February 20, 1981, the damages issue was tried to this Court. On August 25, 1981, this Court issued a judgment in favor of Stucki in the amount of $1,960,700. On March 28, 1983, the Court amended this judgment *nunc pro tunc* to correct a clerical mistake, making the judgment in favor of Stucki $2,182,986. On February 14, 1984, the United States Court of Appeals for the Federal Circuit issued as a mandate its judgment affirming this Court's judgment. On March 8, 1984, this Court granted Stucki's motion for an injunction against RDI restraining RDI from making, having made on its behalf, or using or selling snubbers, as defined by the claims of United States Letters Patent 3,837,292 or for use in a dampened railway truck assembly as claimed in the same Letters Patent, and from actively inducing others to make, have made, use or sell such snubbers. On August 17, 1984, this Court entered an additional judgment of $607,730 in favor of Stucki representing additional damages for infringing sales between February 10, 1981 and March 9, 1984.

In this action Stucki has filed a motion for summary judgment against Stuart A. Schwam, president and 50% owner of RDI. Stucki contends that Mr. Schwam is collaterally estopped from relitigating the validity of Stucki's patent and RDI's infringement of that patent because Mr. Schwam controlled the litigation in C.A. 76–800 on behalf of RDI. Stucki further contends that the undisputed facts of record show that Mr. Schwam is jointly liable with RDI as a matter of law for participating in RDI's patent infringement.

In order to invoke the doctrine of collateral estoppel to preclude relitigation of issues which were actually decided in prior judicial proceedings, the following requirements must be satisfied: (1) the issues to be concluded must be identical to those involved in the prior action; (2) the issues must have been raised and actually litigated in the prior action; (3) the determination of the issues must have been necessary and essential to the resulting judgment; and (4) the party precluded must have been fully represented in the prior action such that the party precluded has had a full and fair chance to litigate the issues to be precluded. *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 & n. 4 (Fed.Cir.1983) (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). There is no question that the issue of the validity of U.S. Patent No. 3,837,292 sought to be precluded in this action is identical to the patent validity issue which was raised and vigorously litigated in the prior action before this Court and the Court of Appeals. There is also no doubt that the determination of the validity of Stucki's patent No. 3,837,292 was essential to the final judgment in favor of Stucki and against RDI for patent infringement. Finally, there is no dispute as to the fact that Stuart A. Schwam was fully represented in

the prior action such that he has had a chance to fully and fairly litigate the issue of the validity of Stucki's patent No. 3,837,-292. Mr. Schwam, president and 50% owner of RDI, testified at length in C.A. 76–800 as the representative of RDI, on the basis of personal knowledge of the activities which were found to constitute patent infringement. In addition, Mr. Schwam was present in the courtroom throughout the trial of the liability and damages issues in C.A. 76–800. "A non-party who 'controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues as though he were a party.'" *Mother's Restaurant, Inc.*, 723 F.2d at 1572 (quoting Restatement (Second) of Judgments § 39 (1980)).

Mr. Schwam is also precluded from relitigating the issue of whether the manufacture and sale of the RDI Control/Master unit constituted infringement of Stucki's patent. The identical issue as to infringement is presented in this lawsuit, since the asserted basis for liability is Mr. Schwam's control of and participation in the sale and manufacture of these infringing goods by RDI. In C.A. 76–800, Mr. Schwam admitted that RDI had infringed the Stucki patent if the Stucki patent was in fact valid. *See* N.T. 2.54. He also testified as to his first hand knowledge of the infringing activities.

Finally, Mr. Schwam is precluded from relitigating the damages suffered by Stucki as a result of RDI's infringement of U.S. Patent No. 3,837,292. As stated, the infringing activity is the same in the prior and the present suits. Mr. Schwam testified at length during the damages portion of the trial in C.A. 76–800 on the issue of reasonable compensation for RDI's infringement of Stucki's patent.

■ The only issue in this Court's consideration of whether Stucki is entitled to summary judgment against Mr. Schwam is whether Mr. Schwam may be held jointly liable for patent infringement that was admittedly committed by RDI. Mr. Schwam and Stucki have opposing views of the controlling legal standard for imposing joint liability for patent infringement upon a corporation and an individual officer, director, or controlling shareholder:

Mr. Schwam's position is that Stucki is not entitled to summary judgment against him because Stucki has not established that Mr. Schwam acted willfully, or with a deliberate purpose to infringe Stucki's patent. Mr. Schwam asserts that such willfulness is an essential prerequisite to the imposition of joint liability upon an officer or director for patent infringement by a corporation. Further, Mr. Schwam asserts that Stucki is collaterally estopped from attempting to prove willfulness by virtue of the jury's finding of nonwillfulness in C.A. 76–800. On the other hand, Stucki contends that the jury's finding of nonwillfulness is irrelevant, because willfulness is not required to impose joint liability upon an individual for patent infringement by a corporation.

Stuart A. Schwam's sworn testimony in C.A. 76–800 and the affidavits submitted by the parties establish that there are no genuine issues as to the following facts: Mr. Schwam was educated in engineering and gained experience in hydraulics. In 1965, Mr. Schwam formed a partnership with Frank Hughes, who had sought Mr. Schwam's expertise in order to apply the principles of hydraulics to control the problem of rock and roll in railroad freight cars. Mr. Schwam designed the MDA Strut Unit, a hydraulic damping system which mounted between the side frame of the car body and the car body. This partnership evolved into RDI.

Mr. Schwam observed a test of the Stucki spring group snubber HS–6 (the patent in suit) in 1969. Mr. Schwam developed RDI's spring group snubber, the MDS Control/Master unit, in 1971. In 1975, the president of Stucki advised Mr. Schwam of the Stucki patent and offered RDI a license under that patent. Mr. Schwam testified that he relied on two attorneys' opinions that the Stucki patent was invalid and did not acquire a license from Stucki. *See* N.T. 2.18—2.41.

Mr. Schwam stated during the bench trial on damages,

> The company in its infancy—and I must say I have been with the company since its infancy—consisted basically of two employees: myself and my secretary.
>
> During this period, up until 1974, my duties included research and development, product engineering, control of marketing, all financial aspects of the company as well as manufacturing aspects.

N.T. 22.85. This record discloses that Mr. Schwam was responsible for the design and manufacture of the RDI Control/Master unit which was found to infringe the Stucki patent.

Neither intent to infringe nor knowledge that a subsisting patent covers what one is making, using, or selling is an element of a direct patent infringement action under 35 U.S.C. § 271(a). 2. P.D. Rosenberg, *Patent Law Fundamentals*, § 17.02 at 17–10.1 (1985). However, willful infringement is relevant with respect to claims of infringement by inducement under 35 U.S.C. § 271(b) and with respect to the availability of treble damages pursuant to 35 U.S.C. § 284. *Id.* at § 17.02[1] at 17–10.2, § 17.08 at 17–49—17.50.2. The issue presented by Stucki's motion is the relevance of willfulness to the imposition of joint liability upon an officer or director of a corporation for participating in patent infringement on behalf of his corporation.

The disagreement between the parties as to the applicable legal standards may be traceable to the following language in the leading case of *Dangler v. Imperial Machine Co.*, 11 F.2d 945 (7th Cir.1926):

> ... [I]n the absence of some special showing, the managing officers of a corporation are not liable for the [patent] infringements of such corporation, though committed under their general direction....
>
> It is when the officer acts *willfully and knowingly* —that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), *or* when he uses the corporation with the purpose of avoiding personal liability—that officers are held jointly with the company. The foregoing are by no means cited as the only instances when the officers may be held liable....

*Id.* at 947. (emphasis added).

Some cases since *Dangler* have retained the "willfully and knowingly" language and have apparently transformed willful infringement into a prerequisite to the imposition of joint liability upon an individual officer or director and his corporation. *See, e.g., Southwestern Tool Co. v. Hughes Tool Co.*, 98 F.2d 42 (10th Cir.1938); *Ronson Corporation v. Maruman of California*, 224 F.Supp. 479 (S.D.Cal.1963).

This Court notes, however, that only one of the listed examples in *Dangler* is based upon intent, i.e. the intent to use the corporation to carry out patent infringement and thereby avoid personal liability. *See* 11 F.2d at 947 (quoted above). The other example focuses upon the individual's direct participation in the infringing activity in a manner which exceeds the general supervision which is ordinarily expected of an officer and director. *See id.* Where the officer or director has directed or ordered the infringing method of manufacture or has controlled the sale of the infringing goods, he is jointly liable with the corporation for patent infringement without regard to his specific intent or knowledge. *Dean Rubber Mfg. Co. v. Killian*, 106 F.2d 316, 320 (8th Cir.), *cert. denied*, 308 U.S. 624, 60 S.Ct. 380, 84 L.Ed. 521 (1939); *Telling v. Bellows-Claude Neon Co.*, 77 F.2d 584, 586 (6th Cir.), *cert. denied*, 296 U.S. 594, 56 S.Ct. 108, 80 L.Ed. 420 (1935); *Claude Neon Lights, Inc. v. American Neon Light Corp.*, 39 F.2d 548, 551 (2d Cir.1930); *National Cash Register v. Leland*, 94 F. 502, 511 (1st Cir.1899); *Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.*, 592 F.Supp. 648 (D.Mass. 1984). *Accord, Wilden Pump & Engineering Co. v. Pressed & Welded Products Co.*, 655 F.2d 984, 990 (9th Cir.1981); *White v. Mar-Bel*, 509 F.2d 287, 292–93 (5th Cir. 1975); *Rex Chainbelt, Inc. v. General Kinematics Corp.*, 363 F.2d 336, 348 (7th

Cir.1966); *Marks v. Polaroid Corp.*, 237 F.2d 428, 435 (1st Cir.1956), *cert. denied*, 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 550 (1957); *Powder Power Tool Corp. v. Powder Actuated Tool Co.*, 230 F.2d 409, 414 (7th Cir.1956); *Pugh v. Roe*, 440 F.Supp. 638, 646 (W.D.La.1977); *U.S. Philips Corp. v. National Micronetics, Inc.*, 410 F.Supp. 449, 468–69 (S.D.N.Y.1976), *aff'd*, 550 F.2d 716 (2d Cir.), *cert. denied*, 438 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 131 (1977); *American Technical Machinery Corp. v. Masterpiece Enterprises, Inc.*, 235 F.Supp. 917, 918 (M.D.Pa.1964); *Upjohn Company v. Italian Drugs Importing Co.*, 190 F.Supp. 361, 367–68 (S.D.N.Y.1961); *Cf. Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978) (unfair competition—liability based on actual participation in tortious activity without regard to knowledge or intent).

Despite the fact that several of the cases cited above contain the word "willful", they do not support Mr. Schwam's position. Certainly, a finding of willful or deliberate infringement by the officer or director supplies a valid basis for holding the officer or director jointly liable for infringement by the corporation. *See, e.g., Mosely v. U.S. Appliance Corp.*, 155 F.2d 25 (9th Cir.), *cert. denied*, 329 U.S. 762, 67 S.Ct. 120, 91 L.Ed. 701 (1946); *Max Daetwyler Corp. v. Input Graphics, Inc.*, 541 F.Supp. 115, 117 (E.D.Pa.1982). But these cases also recognize that direct participation in the infringing activity by the principal officer of the corporation is a distinct basis for holding him jointly liable with the corporation.

The record in C.A. 76–800 and the affidavits furnished in connection with Stucki's motion for summary judgment have established that there are no genuine issues of material fact with respect to Mr. Schwam's 50% ownership of RDI or his status as president and one of three directors of RDI. In addition, there is no dispute that Mr. Schwam controlled the design and manufacture by RDI of the Control/Master unit, the infringing snubber; that he received notice of Stucki's patent in 1975, and that he participated in the decision to continue to manufacture the Control/Master without a license from Stucki. This level of participation is clearly sufficient to justify imposing joint liability for the infringement upon Mr. Schwam.

By way of further defense, Mr. Schwam contends that he acted in reliance upon the opinions of RDI's patent counsel and the patent counsel of RDI's corporate stockholder (then Buckeye International) that the Stucki patent was invalid.

■ Good faith reliance upon an attorney's advice may be a defense to liability based upon willful misconduct. *Cf. Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed.Cir.1983) (following advice of counsel is evidence to be weighed in determining willfulness for purpose of increasing damages under 35 U.S.C. § 284). However, this Court has already concluded that willfulness is immaterial where liability is based upon the direct participation in and control of the infringing design, manufacture, and sale presented in this case. Therefore, a factual determination of whether Mr. Schwam reasonably relied upon the advice of counsel is not material to a determination of his joint liability to Stucki for patent infringement.

For the reasons discussed above, Stucki's motion for summary judgment on count one of the complaint against Stuart A. Schwam will be granted. An Order will be entered.