## A. STUCKI COMPANY, Plaintiff,

v.

## BUCKEYE STEEL CASTINGS COMPANY, Defendant.

No. C–2–88–308.

United States District Court,
S.D. Ohio, E.D.

June 19, 1991.

Raymond G. Hasley, Pittsburgh, Pa., for plaintiff.

Harry A. Goussetis, Worthington Industries, Inc., Beachwood, Ohio, for defendant.

MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

This matter is presently before the Court on defendant's motion for summary judgment.

## STATEMENT OF FACTS

Plaintiff A. Stucki Company ("Stucki") is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. Defendant Buckeye Steel Castings Company ("Buckeye Steel") is an Ohio corporation with its principal place of business in Columbus, Ohio. In its amended complaint plaintiff seeks damages for patent infringement (Count I) and for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (Count II).

A somewhat lengthy history of litigation preceded the filing of this action. In summary, U.S. Patent No. 3,837,292, dealing with hydraulic shock absorbers or "snubbers" used on railroad boxcars, was issued to plaintiff in 1974. At that time, and at all relevant times, defendant Buckeye Steel was a 50% owner of Railroad Dynamics, Inc. ("RDI"), a Pennsylvania corporation which was a competitor of plaintiff. Stuart Schwam owned the other 50% of RDI, and Schwam was also RDI's president and a director of RDI. In 1976 RDI filed an action against Stucki, in the United States District Court for the Eastern District of Pennsylvania, seeking to have Stucki's patent held invalid, and Stucki counterclaimed for patent infringement. That action resulted in a jury verdict for Stucki, upholding the validity of Stucki's patent, and a judgment against RDI for patent infringement. *See Railroad Dynamics, Inc. v. A. Stucki Co.*, 579 F.Supp. 353 (E.D.Pa.1983) (denying, *inter alia,* RDI's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial). The judgment was subsequently affirmed on appeal. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). Shortly thereafter RDI filed for bankruptcy.

Meanwhile, after obtaining the judgment against RDI, plaintiff commenced an action against Schwam and Worthington Industries, Inc. ("Worthington") on November 4, 1983. (Worthington was for much of the relevant time period a part owner of defendant Buckeye Steel.) In that action Stucki sought to hold Schwam and Worthington liable for the patent infringement of RDI, Schwam by virtue of his 50% ownership of and control over the operations of RDI and Worthington by virtue of its ownership interest in defendant Buckeye Steel (not a party to that action [1]), the other 50% owner of RDI. That action ultimately resulted in the entry of summary judgment against Schwam, *see A. Stucki Co. v. Schwam*, 634 F.Supp. 259 (E.D.Pa.), *modified*, 638 F.Supp. 1257 (E.D.Pa.1986), but a directed verdict in favor of Worthington. The directed verdict for Worthington was affirmed on appeal. *See A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593 (Fed.Cir.1988).

Stucki commenced this action against Buckeye Steel on March 14, 1988. Stucki seeks to hold Buckeye Steel liable for the infringement committed by RDI by virtue of Buckeye Steel's part ownership interest in RDI and alleged control of RDI's activities. Plaintiff claims that Buckeye Steel is jointly and severally liable, along with Schwam and RDI, for patent infringement and unfair competition and for the wrongful transfer of funds from RDI to Schwam and Buckeye Steel. Plaintiff also alleges that Buckeye Steel is bound by the 1983 judgment in favor of Stucki and against RDI. In its amended complaint, plaintiff has added a RICO claim, alleging that defendant engaged in a pattern of racketeering activity by causing RDI to infringe Stucki's patent.

---

**1.** It appears that shortly before trial in that action Stucki moved to amend its complaint to include Buckeye as a defendant, but then withdrew that motion. *See A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 595 (Fed.Cir. 1988). Plaintiff states that Worthington "resisted Buckeye's involvement" in that action and that Buckeye Steel was not within the jurisdiction of the Eastern District of Pennsylvania. However, it is clear from the record that plaintiff's motion to join Buckeye Steel was withdrawn voluntarily and was not denied by the Court because of some objection by Worthington or some jurisdictional defect. (In fact, it appears plaintiff withdrew the motion solely to avoid delaying trial on its claims against Worthington.)

Defendant filed a lengthy motion for summary judgment on July 13, 1989. Defendant argues that both plaintiff's claims are barred by the applicable statutes of limitations. Defendant also argues that there is no evidence to support a finding of liability for either direct infringement or inducing infringement, and that summary judgment is appropriate on the merits of plaintiff's RICO claim.

## DISCUSSION

Fed.R.Civ.P. 56(c) provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 729, 88 L.Ed. 967 (1944)); *accord County of Oakland v. City of Berkley,* 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

"The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745, n. 11 [103 S.Ct. 2161, 2171, n. 11, 76 L.Ed.2d 277] (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the

motion. *United States v. Diebold, Inc.,* 369. U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes,* 398 U.S. at 157–60, 90 S.Ct. at 1608–10.

■ If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

### A.

■ Turning first to plaintiff's patent infringement claim,[2] there is no dispute that "corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under [35 U.S.C.] § 271(b) regardless of whether the corporation is the alter ego of the corporate officer." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1579 (Fed.Cir.1986).[3] *See also Fromson v. Citiplate, Inc.,* 886 F.2d 1300, 1304 (Fed.Cir.1989). Furthermore, "[w]here the officer or director has directed or ordered the infringing method of manufacture or has controlled the sale of the infringing goods, he is jointly liable with the corporation for patent infringement without regard to his specific intent or knowledge." *A. Stucki Co.,* 634 F.Supp. at 264 (citations omitted). Also relevant for purposes of this case is the well-established principle that "a non-party may be bound by a judgment if one of the parties to the earlier suit is so closely aligned with the non-party's interests as to be its virtual representative ... [and] a non-party who 'controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he was a party.'" *Mother's Restaurant Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1572 (Fed.Cir.1983).

Relying on these principles, Stucki recovered a judgment against Schwam based upon Schwam's participation in and control of the patent infringement activity of RDI and RDI's defense of Stucki's patent infringement claim in the prior action between Stucki and RDI. Judge Broderick, the district judge presiding over both the RDI–Stucki litigation and Stucki's subsequent case against Schwam, held that Schwam was precluded from relitigating the validity of Stucki's patent, RDI's infringement of the patent, and Stucki's damages, because Schwam on behalf of RDI had controlled the prior litigation in which those issues were decided in favor of

---

**2.** In its supplemental memorandum filed October 13, 1989 plaintiff describes Count I of its amended complaint as based upon four different legal theories: (1) liability on a prior unsatisfied judgment; (2) liability for damages for patent infringement established in a prior judgment and now admitted by defendant in this case; (3) liability for unfair competition; and (4) liability for fraud. Plaintiff contends that Count I states claims under the federal patent laws and under the laws of Pennsylvania. To the extent Count I of plaintiff's amended complaint alleges any state law claims, those claims are addressed elsewhere in this memorandum and order.

**3.** 35 U.S.C. § 271(b) provides:

Whoever actively induces infringement of a patent shall be liable as an infringer.

Stucki. *A. Stucki Co.*, 634 F.Supp. at 262–63. Schwam, however, was not precluded from contesting his own liability for RDI's patent infringement, that issue not being litigated in the prior action. *Id.* at 263. The court ultimately held that Schwam's level of participation in the infringing activity by RDI was sufficient to justify imposing joint liability for the infringement upon Schwam. *Id.* at 265. *See also Fromson*, 886 F.2d at 1303–04.

Stucki now seeks, in this action, to hold Buckeye Steel liable for RDI's patent infringement. Consistent with Judge Broderick's consideration of Stucki's action against Schwam, this Court must consider two issues with respect to defendant Buckeye Steel: (1) whether Buckeye Steel controlled or substantially participated in the control of the litigation between RDI and Stucki such that Buckeye Steel should be held bound by the judgment against RDI in that action; and (2) whether Buckeye Steel's level of participation in the infringing activity of RDI was sufficient to hold Buckeye Steel jointly liable for the damages caused by that activity. However, Buckeye Steel's control over the RDI/Stucki litigation is not really a concern in this case, since Buckeye Steel does not seek to relitigate issues determined in that action; Buckeye Steel concedes that Stucki's patent was valid and infringed by RDI. The central issue in dispute in this case is whether Buckeye Steel, by virtue of its part ownership interest in RDI and its alleged participation in the infringing activity of RDI, can be held jointly liable for that activity.

Plaintiff's claim that Buckeye Steel should be held liable for the infringement by RDI is based on several alleged facts, including the following: Buckeye Steel owned 50% of RDI during the relevant time period, and at the time the infringement commenced Buckeye Steel had a representative, Lewis Day, on RDI's board of directors; Buckeye Steel contributed substantial capital to RDI to enable RDI to engage in the infringing activity; personnel of RDI were at some point on Buckeye Steel's payroll; Buckeye Steel accepted distributions from RDI which constituted the profits wrongfully gained from RDI's infringement; and an officer of Buckeye Steel at times referred to RDI as a "partnership." Buckeye Steel denies that it was involved in the day-to-day operations of RDI, or that receipt of dividends from RDI was in any way wrongful. Buckeye Steel also contends that RDI was a corporation under the laws of Pennsylvania and was not a partnership nor was it operated as a partnership. It is Buckeye Steel's position that its ownership of RDI stock was purely a portfolio investment and that there is no evidence to warrant piercing RDI's corporate veil and finding that Buckeye Steel participated in the infringing activity of RDI to such an extent that Buckeye Steel should be held jointly liable.

■ The Court has carefully reviewed the arguments of the parties and the evidence presently before the Court (which includes much of the record in Stucki's previous case against Schwam and Worthington). It is clear from that evidence that Buckeye Steel is in a very different position from Schwam with respect to the activities of RDI. Schwam owned 50% of RDI, was its president, and was one of its three directors. More significantly, as Judge Broderick explained, "Mr. Schwam controlled the design and manufacture by RDI of the Control/Master unit, the infringing snubber[,] ... received notice of Stucki's patent in 1975, and ... participated in the decision to continue to manufacture the Control/Master without a license from Stucki." *A. Stucki Co.*, 634 F.Supp. at 265. Although an officer of Buckeye Steel remarked that RDI was something of a "partnership" between Buckeye Steel and Schwam, there is no dispute that RDI was an entity duly incorporated under the laws of Pennsylvania. It appears, as defendant contends, that Schwam was in fact the driving force behind RDI.

However, plaintiff's inability to establish Worthington's liability does not necessarily require the conclusion that Buckeye Steel cannot be held liable. Worthington was one step removed from RDI, and was not connected with RDI at all until 1979. *A.*

*Stucki Co.,* 849 F.2d at 594. Buckeye Steel, on the other hand, held stock in RDI throughout the relevant time period, including when RDI's infringement activity began. Furthermore, Buckeye Steel did have a representative on RDI's board of directors until 1981, and did receive distributions from RDI.

This Court, on the basis of the record now before it, finds little evidence to support plaintiff's claim that Buckeye Steel should be liable for RDI's patent infringement. Buckeye Steel's role appears to have been limited to that of an investor, and, as the federal circuit observed, " '[m]ere ownership of stock is not enough to pierce the corporate veil.' " *A. Stucki Co.,* 849 F.2d at 596 (quoting *Milgo Elec. Corp. v. United Business Communications,* 623 F.2d 645, 662 (10th Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980)). Even though it had a representative on RDI's board of directors, there is little to suggest that either Buckeye Steel or its representative participated in the infringing activity, induced the infringement, or was in a position to prevent the infringement. Therefore, as in Stucki's case against Worthington, a directed verdict in favor of Buckeye Steel, or, at this stage, summary judgment for Buckeye Steel, on the merits of plaintiff's patent infringement claim may well be warranted. However, the Court need not go so far as to decide that issue, as the Court finds that plaintiff is precluded by statute from recovering any damages from Buckeye Steel arising from Buckeye Steel's alleged participation in RDI's activities. Specifically, plaintiff's ability to recover damages on its patent infringement claim is limited by 35 U.S.C. § 286, which provides in pertinent part:

> Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

Defendant contends that the statute is applicable and would bar recovery for any infringement occurring prior to March 14, 1982, six years before this action was commenced. Defendant further contends that since all of its conduct which might give rise to liability occurred prior to March 14, 1982, plaintiff's patent infringement claim is in its entirety time barred. Plaintiff contends that defendant's reliance upon 35 U.S.C. § 286 is misplaced and that the applicable defenses, if any, are laches and estoppel. It is plaintiff's position that its involvement in other litigation concerning its patent, and the pendency of RDI's bankruptcy, should excuse any delay in commencing this action.

The decision on which defendant principally relies, *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd.,* 754 F.2d 345 (Fed.Cir.1985), explains that Section 286 is not *per se* a statute of limitations for patent infringement actions, but rather is a limitation on the damages available on a patent infringement claim:

> Assuming a finding of liability, the only effect § 286 has is to prevent any "recovery ... for any infringement committed more than six years prior to the filing of the complaint...." Therefore, suit could be maintained and recovery of damages could be had for infringement taking place *within* the six years prior to the filing of the complaint. This assumes, of course, no other impediment to recovery or maintenance of the suit such as application of the doctrine of laches. Since § 286 cannot properly be called a "statute of limitations" in the sense that it defeats the right to bring suit, it cannot be said that the statute "begins to run" on some date or other. In the application of § 286, one starts from the filing of a complaint or counterclaim and counts *backward* to determine the date before which infringing *acts* cannot give rise to a right to recover damages.

*Id.* at 348. *See also TWM Mfg. Co. v. Dura Corp.,* 592 F.2d 346, 348 (6th Cir. 1979); *Intertech Licensing Corp. v. Brown & Sharpe Mfg. Co.,* 708 F.Supp. 1423, 1433 (D.Del.1989); *Whitehall Corp. v. Western Geophysical Co. of Am.,* 664 F.Supp. 1056, 1073 (S.D.Tex.1986).

Plaintiff cites *Fromson v. Citiplate, Inc.,* 886 F.2d 1300 (Fed.Cir.1989), in sup-

port of its argument that defendant cannot rely upon 35 U.S.C. § 286 to limit its liability in this action. However, the *Fromson* case is clearly distinguishable. In *Fromson*, the pertinent issue was whether the district court erred in allowing a post-judgment amendment to the plaintiff's complaint to add the defendant corporation's two shareholders (who were also its only officers and directors) as defendants personally liable on the judgment entered against the corporation. The Federal Circuit upheld the district court's ruling under Fed.R.Civ.P. 15(c), since the individual defendants had clearly participated in the corporation's infringing activity, knew that their joinder in the action was a strong possibility (and, in fact, resisted a pretrial motion to join them by falsely assuring the solvency of the corporation, which filed for bankruptcy shortly after judgment was entered against the corporation but before the individual defendants were joined), and controlled the litigation on behalf of the corporation. *Id.* at 1303–04. By contrast, the present case does not involve any "joinder" of Buckeye Steel in the RDI/Stucki litigation or any theory of "relation back" under Rule 15(c).[4] The issue here concerns limitations on a plaintiff's ability to bring a separate lawsuit to hold a corporation's shareholders liable for a judgment entered against the corporation.

The Court is satisfied that 35 U.S.C. § 286 is applicable here and would limit the amount of damages plaintiff might recover against defendant. Indeed, the fact that section 286 and the defense of laches are entirely separate matters should be well understood by plaintiff considering the decision of the Judge Broderick in plaintiff's suit against Schwam, which rejected Schwam's laches defense while limiting the recovery against Schwam pursuant to Section 286. *A. Stucki Co.*, 638 F.Supp. at 1261. Defendant in the present case is not asserting a laches defense as the basis for

its motion for summary judgment, and thus the Court need not inquire into such factors as the justification for plaintiff's delay in filing suit against defendant or the prejudice to defendant. Rather, under the plain language of Section 286, the Court's task is simply to start from the filing of the complaint and "count[ ] *backward* to determine the date before which infringing *acts* cannot give rise to a right to recover damages." *Standard Oil Co.*, 754 F.2d at 348.

The Court must first determine what date would constitute "the filing of the complaint" for purposes of Section 286. Defendant contends that the date is March 14, 1988, the date plaintiff filed its complaint in this action. Although not directly disputing this contention, plaintiff, by couching its claims against defendant in terms of an action to enforce the judgment obtained against RDI, argues that the same amount of damages awarded against RDI should be recoverable from Buckeye Steel. Implicit in this position is the argument that, for purposes of Section 286, "the filing of the complaint" should be the date plaintiff filed its counterclaim for patent infringement against RDI, *i.e.*, that plaintiff's action here somehow "relates back" to that counterclaim. However, the Court finds no merit to this position, which appears to have been unsuccessfully asserted by plaintiff in its previous action against Schwam:

> In circumstances such as are presented by this case, where a judgment against a corporation is later sought to be made jointly applicable to the corporation and the individual who was its moving force, it might be fair to consider the filing of the *first* action as "the filing of the complaint." No direct support for such a proposition has been cited by the Court. In the absence of some authority for recognizing an exception to the plain language of section 286, this Court will reduce Stucki's judgment against Mr.

---

4. Stucki could have joined Buckeye Steel as an additional counterclaim defendant in the RDI/ Stucki litigation, but for whatever reason it chose not to do so. (Plaintiff has generally suggested that Buckeye Steel was not within the jurisdiction of the Eastern District of Pennsylva-

nia. However, the record does not contain sufficient facts to determine whether or not the Eastern District of Pennsylvania could have exercised personal jurisdiction over Buckeye Steel.)

Schwam to those infringements by RDI within the six years prior to November 4, 1983 plus prejudgment interest.

*Id.* at 1261. Accordingly, the Court concludes that in the present case plaintiff is precluded under Section 286 from recovering damages from Buckeye Steel for any infringement committed prior to March 14, 1982.

The Court must now consider what practical effect this conclusion has on plaintiff's patent infringement claim; that is, the issue now is whether defendant Buckeye Steel participated in or induced any infringing conduct after March 14, 1982. Paragraph 29 of plaintiff's amended complaint alleges that the infringement by RDI continued through April 1984, and thus defendant is potentially liable for the infringement during the approximately two-year period between March 14, 1982 and April 1984. However, the problem is that there is simply no evidence to support a finding that defendant participated in or induced any patent infringement during that period. It is undisputed that defendant ceased having a representative on RDI's board of directors in 1981, and there is no evidence to suggest that defendant had any ability to control RDI's activities after that date. Indeed, plaintiff itself states that Buckeye Steel adopted a "hands-off and stay clear policy" after June 1980. Furthermore, the record shows that in February 1981 counsel for RDI and Stucki stipulated that RDI could continue to make and sell the infringing product until its appeals were exhausted, which was in March 1984. Buckeye Steel was not a party to that stipulation, and plaintiff has presented no evidence to warrant a conclusion that Buckeye Steel should be liable for participating in or inducing RDI's infringing activity which was engaged in pursuant to that stipulation.

■ Plaintiff also argues that RDI's bankruptcy, which may or may not still be pending at this time, prevents defendant from relying on any limitations argument. Specifically, plaintiff states: "It is submitted that any limitations should not begin to run until the bankruptcy is conclud-ed since Buckeye could step in and reorganize RDI if it wanted to do so." It may be true, as plaintiff asserts, that the amount of plaintiff's claim against defendant remains uncertain until plaintiff recovers all it can on its judgments against RDI and Schwam. However, this certainly would not toll the statute of limitations from commencing on an action against Buckeye Steel or any other potentially liable party, nor would it affect the six-year limit on damages provided in 35 U.S.C. § 286. Plaintiff fails to cite any authority to support the proposition that when one culpable party, against whom a judgment is obtained, files for bankruptcy, the statute of limitations is tolled with respect to all other potentially culpable parties. Furthermore, in the usual case a statute of limitations commences to run when the cause of action accrues, that is, when the plaintiff is first able to assert that cause of action, and thus it seems somewhat anomalous for plaintiff herein to bring an action against Buckeye Steel and at the same time argue that the applicable statute of limitations period has not begun to run. Of course, as previously explained, 35 U.S.C. § 286 is not a typical statute of limitations, since it acts to limit the recovery of damages but not necessarily to bar an action in its entirety. Applying the plain language of section 286, the Court must count backward six years from March 14, 1988, and the Court does not believe that RDI's intervening bankruptcy would in any way affect the operation of 35 U.S.C. § 286 to limit plaintiff's recovery of damages in this action.

■ For these reasons, the Court finds that all of RDI's infringing activity for which defendant might potentially be held liable occurred prior to March 14, 1982, and therefore plaintiff's recovery for that infringement is barred by 35 U.S.C. § 286. *Standard Oil Co.,* 754 F.2d at 348. Therefore, defendant is entitled to summary judgment on plaintiff's patent infringement claim. The only remaining question with respect to Count I, then, is whether plaintiff can maintain its claim against defendant on state law theories of unfair competition and fraud. However, since plaintiff

856

did not commence this action until March 14, 1988, more than four years after any action of Buckeye Steel which might give rise to liability under either of these theories, these state law claims would be time-barred under Pennsylvania law, which provides a two-year statute of limitations, as well as under Ohio law, which has a four-year statute of limitations. *See* 42 Pa. Cons.Stat. § 5524(7); Ohio Rev.Code § 2305.09(C).

Accordingly, summary judgment for defendant is appropriate on Count I of plaintiff's amended complaint in its entirety.

### B.

Turning then to Count II of plaintiff's amended complaint, plaintiff's RICO claim, the parties dispute whether plaintiff sufficiently alleges the elements of a RICO claim as well as whether plaintiff has presented any evidence to support such a claim. Plaintiff argues that *Formax, Inc. v. Hostert*, 841 F.2d 388 (Fed.Cir.1988), stands for the proposition that patent infringement can be the basis for a RICO violation. Defendant disagrees, arguing that *Formax* involved fraudulent misappropriation of trade secrets in addition patent infringement. However, the Court need not decide whether the misconduct alleged in this case would be sufficient to establish a civil RICO claim, as the Court finds that any such claim would be time-barred.

It is established that civil RICO claims are governed by a four-year statute of limitations. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987); *Lund v. Shearson/Lehman/American Express, Inc.*, 852 F.2d 182, 184 (6th Cir.1988). It is also well settled that the statute of limitations begins to run when the plaintiff discovered or reasonably should have discovered the basis for the RICO claim. *See, e.g., Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102–05 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Defendant contends that the statute of limitations for any RICO claim in this case, if one can be maintained at all, would certainly

have commenced prior to July 29, 1984 (four years before the filing of plaintiff's amended complaint), since plaintiff has not alleged or presented evidence to establish any misconduct by Buckeye Steel after that date. (Indeed, according to plaintiff's amended complaint, the patent infringement ceased in April 1984.) Plaintiff, on the other hand, consistent with its position of the patent infringement claim, asserts that the limitations period applicable to the RICO claim will not begin to run until after RDI's bankruptcy is concluded. Again, however, the Court fails to see how RDI's bankruptcy should affect plaintiff's ability to bring a RICO action against Buckeye Steel. Plaintiff's RICO cause of action against Buckeye Steel would clearly have accrued prior to July 29, 1984, and since plaintiff failed to file its RICO claim within four years of the accrual of that cause of action, the Court does find that plaintiff's RICO claim is barred by the four-year statute of limitations.

Accordingly, summary judgment for defendant is appropriate on Count II.

### CONCLUSION

Consistent with the foregoing, defendant's motion for summary judgment is GRANTED. The clerk shall enter judgment for defendant.

IT IS SO ORDERED.