## ELI LILLY AND COMPANY, Plaintiff–Appellant,

v.

## PREMO PHARMACEUTICAL LABORATORIES, INC., Federal Pharmacal, Inc., Seymour N. Blackman, Steven Blackman and John Blackman, Defendants–Appellees,

## VITARINE PHARMACEUTICALS, INC., Cross–Appellant,

v.

## Richard D. WOOD, C. Harvey Bradley, Jr., Cornelius W. Pettinga, Eugene L. Step and Arthur R. Whale, Counterclaim Defendants.

Nos. 87–1373, 87–1380.

United States Court of Appeals, Federal Circuit.

April 7, 1988.

Paul H. Berghoff, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., argued, for plaintiff-appellant. With him on the brief, was D. Dennis Allegretti.

Stanley Lieberstein, Ostrolenk, Faber, Gerb & Soffen, New York City, argued, for cross-appellant. With him on the brief, was Edward A. Meilman.

Before BISSELL and MAYER, Circuit Judges and COWEN, Senior Circuit Judge.

## OPINION

MAYER, Circuit Judge.

These cross-appeals are from an order of the United States District Court for the District of New Jersey, 4 USPQ2d 1080 (1987), that Vitarine Pharmaceuticals, Inc. (Vitarine) is not in contempt of an earlier order enjoining Premo Pharmaceutical Laboratories, Inc. (Premo) from infringing certain Eli Lilly and Company (Eli Lilly) patents. The court held that although Vitarine is a successor in interest to Premo bound by the injunction order, it did not infringe the patents. We conclude that Vitarine is not subject to the order and, on that basis, affirm the judgment that Vitarine is not in contempt. We do not reach the patent infringement issue.

### Background

In 1978, Eli Lilly filed suit against Premo, Federal Pharmacal, Inc. (Federal), and others alleging infringement of two of its patents, U.S. Patent Nos. 3,507,861 ('861) and 3,655,656 ('656). The patents are for an oral antibiotic, generically known as cephalexin monohydrate (cephalexin), which is commonly used as an alternative to penicillin. The district court preliminarily enjoined Premo from manufacturing or selling cephalexin as claimed in the '861 patent and this judgment was affirmed. *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 207 USPQ 719 (3rd Cir.1980).

After remand for further proceedings on the merits, on July 10, 1981, the district court entered a Stipulation and Order of Dismissal (dismissal order) based on a settlement agreement. In that agreement, which apparently was never filed in the official court records, Premo admitted that Eli Lilly's '861 and '656 patents "are valid and that PREMO has infringed those patents by purchasing and selling cephalexin monohydrate." The dismissal order said:

Premo Pharmaceutical Laboratories, Inc., Federal Pharmacal, Inc., ... their subsidiaries, affiliates, *successors, assigns*, directors, officers, agents, servants, employees and attorneys, and any person or entity in active concert or par-

ticipation with them, or any of them, who receives actual notice of this Stipulation and Order of Dismissal by personal service or otherwise, including any such distributors, suppliers, and hospital and retail pharmacies who are in active concert or participation with them, *are permanently enjoined from directly or indirectly infringing or inducing infringement of United States Letters Patent Nos. 3,507,861 and 3,655,656 owned by Eli Lilly and Company,* by the manufacture, use, sale, offering for sale, or promoting or inducing the sale in the United States, its territories or possessions, *of cephalexin as described in those patents.* [Emphasis added.]

In December 1981, the Lemmon Company (Lemmon) acquired Premo and Federal and their assets were dispersed throughout Lemmon. Some of Premo's assets were placed within Drummer Laboratories, an unincorporated division of Lemmon. Among these assets was New Drug Application (NDA) No. 62–159 for cephalexin, which had been approved by the federal Food and Drug Administration (FDA) in 1979.

In September 1983, Phoenix Pharmaceuticals, Inc. (Phoenix) acquired selected assets from Lemmon which were characterized as existing in Drummer Laboratories. With a few exceptions not relevant here, Phoenix did not assume any of Lemmon's liabilities. The only asset Phoenix acquired relevant to this appeal is title to the NDA. In December 1985, Phoenix changed its name to Vitarine Pharmaceuticals, Inc.

In September 1986, Vitarine submitted an application to the New Jersey Drug Utilization Review Council requesting that its cephalexin capsules be added to an approved list of drugs. Vitarine made it clear, however, that its cephalexin would not be available until after Eli Lilly's '861 patent expired in April 1987 and, consequently, requested that its product not be added to the approved list until then. In support of its application, Vitarine relied on Premo's final report on cephalexin, which led to the approval of the NDA, and which

Vitarine has updated and supplemented with new data provided to the FDA.

In February 1987, Eli Lilly filed a motion for an order to show cause why Vitarine, as Premo's successor in interest, should not be held in contempt of the district court's dismissal order enjoining infringement of the patents. The court ruled that Vitarine was a successor in interest to Premo within the contemplation of the order but concluded that Vitarine's proposed sale of cephalexin did not infringe the '861 patent because it would not occur until after the expiration of that patent. The court also determined that Vitarine did not infringe either claim of the '656 patent, which expires in April 1989, because Vitarine's encapsulated cephalexin was not "dense" within the meaning of those claims. Accordingly, the court denied Eli Lilly's motion to hold Vitarine in contempt.

On appeal, Eli Lilly says the district court "erred as a matter of law in construing the meaning of the term 'dense' in Claim 1 of the '656 patent." Had it properly construed the claim, Eli Lilly argues, the court would have concluded that Vitarine's cephalexin infringed the '656 patent, and that Vitarine was therefore in contempt. Eli Lilly does not contest the court's finding of noninfringement of either claim 2 of the '656 patent or the '861 patent. In a cross-appeal, Vitarine challenges the district court's ruling that it is a successor in interest to Premo and bound by the dismissal order.

### Discussion

We consider the successor in interest question first. Rule 65(d) of the Federal Rules of Civil Procedure provides:

Every order granting an injunction ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

According to the Supreme Court, this rule "is derived from the common-law doctrine that a decree of injunction not only binds

the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945), *quoted in Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179, 94 S.Ct. 414, 422, 38 L.Ed.2d 388 (1973).

█ The dismissal order says "successors" and "assigns" are bound by the injunction. Rule 65(d), however, does not include successors and assigns as among those whom an injunction is "binding only upon." Again according to the Supreme Court, "The term 'successors and assigns' in an enforcement order of course may not enlarge its scope beyond that defined by the Federal Rules of Civil Procedure. Successors and assigns may, however, be instrumentalities through which defendant seeks to evade an order or may come within the description of persons in active concert or participation with them in the violation of an injunction. If they are, by that fact they are brought within scope of contempt proceedings by the rules of civil procedure." *Regal Knitwear*, 324 U.S. at 14, 65 S.Ct. at 481. Further, "whether one brings himself in contempt as a 'successor or assign' depends on an appraisal of his relations and behavior and not upon mere construction of terms of the order." *Id.* at 15, 65 S.Ct. at 481; *see Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1582, 1583, 230 USPQ 81, 93 (Fed.Cir.1986).

█ Eli Lilly has not shown that Vitarine, which was not a party to the case leading to the dismissal order's injunction, is an instrumentality designed to evade the injunction or is in active concert or participation with the original defendants. Indeed, Vitarine was not formed by the original individual or corporate defendants or by any officer, director, agent, servant, employee, or attorney of the corporate defendants, and no officer, director, or principal of Vitarine was ever associated in any way

with either Premo or Lemmon.* Furthermore, as the district court found, Vitarine was unaware of the dismissal order, and therefore the injunction, at the time it acquired the NDA from Lemmon. In fact, it only became aware of the dismissal order when these contempt proceedings were initiated in February 1987. And, Vitarine cannot be considered merely a continuation of Premo, *see Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 25, 196 USPQ 81, 94 (7th Cir.1977), because Vitarine did not acquire from Lemmon a number of Premo's former assets and did not assume any significant liabilities of Lemmon. As a result, Vitarine cannot be thought of as an instrumentality through which the original defendants seek to evade an order or as a person in active concert or participation with those defendants.

The district court thought that under the guidelines of *Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335, 161 USPQ 65 (7th Cir.1969), Vitarine was a successor in interest to Premo because of its acquisition of the NDA. We disagree. In *Brunswick*, the court said that "[t]o determine whether privity existed, we must determine whether Chrysler has *succeeded in interest to the subject matter of the prior decree." Id.* at 338, 161 USPQ at 67 (emphasis added). In that case, Chrysler was aware of, but argued that it was not bound by, a consent decree entered into by the West Bend Company (West Bend), which stipulated that certain patents for boating products were valid and infringed by West Bend and for which West Bend had therefore agreed to a licensing arrangement. In concluding that Chrysler was in privity with West Bend, the court noted that Chrysler purchased the "entire business" devoted to the production of the patented boating products. Furthermore, West Bend ceased operation of its boating products division and transferred its personnel and manufacturing and

---

* One Vitarine employee, in charge of manufacturing, worked as a plant manager for Premo before leaving in 1981 to join a company unrelated to this case. In 1983, he accepted a position with Lemmon. He was not an executive, principal, or officer of Premo, did not participate in the negotiations or transaction resulting in Vitarine's acquisition of assets from Lemmon and was neither familiar with the dismissal order nor consulted about any litigation involving Premo. He is not a shareholder, director, or corporate officer of Vitarine.

sales facilities to Chrysler. Accordingly, the Seventh Circuit was satisfied that Chrysler had "succeeded in interest to the subject matter of the prior decree." *Id.*

Our case is entirely different. Unlike Chrysler, which obtained the "entire business" that produced the infringing and later licensed products, Vitarine merely acquired the NDA for cephalexin. It did not acquire personnel or manufacturing and sales facilities for cephalexin. And, unlike Chrysler, it obtained this asset neither with notice of the prior decree nor directly from the party bound by that decree. Moreover, the decree in *Brunswick* specifically stated that the defendant's products infringed the plaintiff's patents and established a licensing arrangement between the parties whereas in our case the dismissal order, in enjoining infringement, does not state that Premo, or anyone else, infringed the Eli Lilly patents and says nothing about the NDA.

An approved NDA simply signifies that a drug has met federal safety and efficacy requirements and therefore can be introduced into interstate commerce. 21 U.S.C. § 355(a) and (d); *see Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 864, 221 USPQ 937, 941 (Fed.Cir.1984); *Simeon Management Corp. v. FTC*, 579 F.2d 1137, 1143 (9th Cir.1978). It is not equivalent to the product it addresses; it does not authorize anyone to make, use or sell cephalexin, and certainly not in derogation of another's patent. *Cf.* 35 U.S.C. § 271(e)(2). In short, the NDA is a separate property which was not involved in the Eli Lilly–Premo injunction action and was not mentioned in the dismissal order. At least insofar as the settlement agreement was concerned, Premo's wrong was its infringement of Eli Lilly's patents, not its acquisition of the NDA. It cannot be said that by acquiring the NDA Vitarine "succeeded in interest to the subject matter of the prior decree."

Eli Lilly is not helped by *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), either. In that case, a bona fide purchaser acquired a soft drink bottling and distribution business with knowledge that an unfair labor practice of its predecessor had not been remedied. The purchaser continued to operate the business without substantial change. The National Labor Relations Board had ordered the predecessor to correct the unfair labor practice and the order applied to its "successors, and assigns." Under these circumstances, the Supreme Court said that "for purposes of Rule 65(d)" the purchaser "may be considered in privity with its predecessor." *Id.* at 180, 94 S.Ct. at 423. The reasoning of *Golden State Bottling* does not control here because Vitarine neither acquired a complete business nor had knowledge of the dismissal order at the time it acquired the NDA.

Because Vitarine did not succeed to Premo's interest in the subject of the dismissal order, the injunction does not apply and it cannot be held in contempt. *See Regal Knitwear*, 324 U.S. at 13, 65 S.Ct. at 481 ("The courts ... may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law"). This makes it unnecessary for us to decide whether Vitarine infringed claim 1 of Eli Lilly's '656 patent.

### Conclusion

Accordingly, the district court's judgment that Vitarine is not in contempt is

AFFIRMED.