**A. STUCKI COMPANY,**
**Plaintiff–Appellant,**

v.

**WORTHINGTON INDUSTRIES, INC.,**
**Defendant–Appellee.**

No. 88–1063.

United States Court of Appeals,
Federal Circuit.

June 8, 1988.

**594**

Raymond G. Hasley, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, Pa., argued for plaintiff-appellant. With him on the brief was E. Wallace Breisch.

Charles G. Hileman, Schnader, Harrison, Segel & Lewis, Philadelphia, Pa., argued for defendant-appellee. With him on the brief was Bonnie MacDougal Kistler.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and BALDWIN, Senior Circuit Judge.

MARKEY, Chief Judge.

A. Stucki Company (Stucki) appeals from a judgment of the United States District Court for the Eastern District of Pennsylvania, No. 83–5340 (October 28, 1987) (Broderick, J.), granting a directed verdict to Worthington Industries, Inc. (Worthington). We affirm.

## BACKGROUND

In 1976, Railroad Dynamics, Inc. (RDI) filed a declaratory judgment action against Stucki, seeking a declaration that Stucki's U.S. Patent No. 3,837,292 was invalid. Stucki counter-claimed for infringement, which RDI admitted. Pre-trial proceedings continued throughout the 1970's.

In December 1979, a subsidiary of Worthington acquired a majority of the shares of Buckeye International, Inc., a publicly-held manufacturing company whose assets included 50% of RDI's stock. Stuart Schwam, RDI's president and product designer, owned the remaining 50%. Effective May 27, 1980, Buckeye was merged with Worthington's subsidiary, which then changed its name to Buckeye International, Inc.

RDI declared a dividend on April 30, 1980, at the close of its fiscal year. Although RDI normally paid its dividends in July, it paid its 1980 dividend on May 30, so that the dividend could be included in the year-end consolidated financial statements of Worthington and its subsidiaries.

On June 10, 1980, the jury in the RDI/Stucki litigation returned a verdict for Stucki, and on March 28, 1983, the district court entered a final judgment awarding Stucki $2,182,186. *Railroad Dynamics, Inc. v. A. Stucki Co.,* 579 F.Supp. 353, 218 USPQ 618 (E.D.Pa.1983). Both parties appealed to this court, stipulating that no injunction would issue until a final judgment was entered in Stucki's favor.

On November 4, 1983, concerned that RDI would not be able to pay the damages awarded Stucki, Stucki filed the present action against Worthington and Stuart Schwam. Stucki alleged in Count I of its complaint that Worthington and Schwam were jointly liable with RDI for infringing Stucki's patent. Stucki alleged, *inter alia,* that Schwam and Buckeye "controlled" RDI's shares and operated RDI as "an instrumentality for improper purpose."

Stucki alleged in Count II of its complaint that Worthington and Schwam were liable under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.

C. §§ 1961–1968 (1982)), relying on assertions that RDI's charter, dividend checks, financial statements, and income tax returns were fraudulent, and that RDI had used the mails and telephones in a scheme to defraud Stucki by infringing its patent and rendering RDI unable to pay damages.

On January 25, 1984, this court affirmed the district court's March 28, 1983 judgment. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). On receipt of this court's mandate, the district court enjoined RDI from further infringement on March 8, 1984. Within two weeks, RDI commenced bankruptcy proceedings. On August 17, 1984, the district court entered an additional judgment awarding Stucki $607,730 in damages for infringing sales from February 10, 1981 through March 9, 1984, for a total liability of $2,890,716, plus post-judgment interest. RDI has paid Stucki at least one million dollars, but has not fully satisfied the judgment.

Proceedings in the present action continued. The district court granted summary judgment against Stuart Schwam on Count I of Stucki's complaint. *A. Stucki Co. v. Schwam*, 634 F.Supp. 259, 229 USPQ 903 (E.D.Pa.), *modified* 638 F.Supp. 1257 (E.D.Pa.1986). On August 26, 1986, the district court entered a judgment that Schwam was jointly liable with RDI for $2,440,600. After Schwam's appeal to this court was dismissed for failure to prosecute, the parties entered into a settlement agreement.

The district court bifurcated the trial in Stucki's action against Worthington, directing that liability be tried first. On September 28, 1987, Worthington filed a motion *in limine* to preclude Stucki from introducing any evidence of damages beyond those awarded in the RDI litigation. On October 20, 1987, the court denied the motion without prejudice to its being reasserted during the damages phase of the case.

Stucki moved on September 29, 1987 to amend its complaint to include Buckeye as a defendant. Informed that Buckeye would need opportunity to answer and conduct discovery, and that trial would consequently be delayed, Stucki withdrew the motion on October 21, 1987, electing to proceed against Worthington alone.

A jury trial on liability commenced on October 22, 1987. After four days of testimony, the district court granted Worthington's motion for directed verdict under Fed. R.Civ.P. 50(a). On Count I, the district court said that Stucki had presented no evidence that Worthington had directly infringed Stucki's patent or induced RDI or Stuart Schwam to infringe. On Count II, the district court said Stucki had presented no evidence of any predicate crimes giving rise to RICO liability, and no evidence that Worthington was associated with the acts Stucki alleged were predicate crimes. The district court concluded that with "this evidence, you are trying to make a silk purse out of some Sow's ear here and it doesn't work." Stucki appealed.

## ISSUES

(1) Whether the district court erred in directing a verdict for Worthington.

(2) Whether Stucki's request for a ruling on damages is moot.

## OPINION

### I. *Directed Verdict*

#### A. *Standard of Review*

This court must affirm the district court's grant of directed verdict unless Stucki shows that a jury could reasonably have returned a verdict in its favor on the presentation it had made when all justifiable inferences are drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255, 106 S.Ct. 2505, 2512, 2513, 91 L.Ed.2d 202 (1986); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983). "The mere existence of a scintilla of evidence in support of [Stucki's] position will be insufficient; there must be evidence on which the jury could reasonably find for [Stucki]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. We con-

clude that, under the governing law, there could be but one reasonable verdict. Thus, the district court properly directed a verdict in Worthington's favor under Fed.R. Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### B. *Patent Infringement*

Stucki asserts that Worthington is liable with RDI as a direct infringer under 35 U.S.C. § 271(a) and for inducing infringement under 35 U.S.C. § 271(b). Though Stucki refers to "contributory infringement" in a generalized, nonstatutory discussion, it neither argues nor asserts that Worthington is liable for contributory infringement under the criteria set forth in 35 U.S.C. § 271(c).[1] Hence we need not and do not discuss contributory infringement.

### 1. Direct Infringement

■ Worthington can be liable for RDI's infringement under 35 U.S.C. § 271(a) only if the evidence reveals circumstances justifying disregard of the status of RDI and Worthington as distinct, separate corporations. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1579, 1 USPQ2d 1081, 1090 (Fed.Cir.1986) ("To determine whether corporate officers are personally liable for the direct infringement of the corporation under § 271(a) requires invocation of those general principles relating to piercing the corporate veil."); *Milgo Elec. Corp. v. United Business Communications,* 623 F.2d 645, 660, 206 USPQ 481, 492 (10th Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980); *see generally* Note, *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law,* 95 Harv.L.Rev. 853 (1982) [hereinafter Note, *Alter Ego* ].

Stucki makes lofty pronouncements concerning Worthington's "duty to not [sic] infringe a patent," contending that Worthington is liable because it did nothing to stop RDI's infringement. There was, however, no evidence that Worthington had control over RDI's actions and *could* have stopped the infringement. *See Milgo,* 623 F.2d at 660, 206 USPQ at 493 (parent liable for subsidiary's infringement where evidence showed an "overlapping business relationship controlled by" parent); *Swift Chem. Co. v. Usamex Fertilizers, Inc.,* 197 USPQ 10, 21 (E.D.La.1977) (parent liable for infringement carried out by subsidiary where parent "controlled virtually every phase of the subsidiary's operation"); *see generally* Note, *Alter Ego,* at 866–67. Although Stucki broadly *asserts* that "Mr. Schwam, Buckeye and Worthington controlled RDI and Worthington controlled and dominated its subsidiary," Stucki has pointed to no *evidence* supporting that assertion beyond Worthington's acquiring the stock of Buckeye long after RDI's infringement had begun, and Buckeye's ownership of 50% of RDI's stock. "Mere ownership of stock is not enough to pierce the corporate veil," however. *Milgo,* 623 F.2d at 662, 206 USPQ at 494.

■ Stucki argues that Worthington is liable because of "corporate/successor liability for the pre-merger infringement liability of Buckeye International, Inc.," and that, "[a]fter May 1980, Worthington and Buckeye were one and the same with regard to RDI and Worthington stepped into the shoes of Buckeye." Again, Stucki points to no *evidence* that Worthington is a successor in interest to Buckeye or has assumed any liability Buckeye might have for RDI's patent infringement. As above indicated, Worthington's acquisition of Buckeye's stock is not such evidence.

---

1. 35 U.S.C. §§ 271(a), (b) and (c) (1982) provide:

**§ 271. Infringement of patent**

(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

*Compare Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 843 F.2d 1378, 6 USPQ2d 1367 (Fed.Cir.1988) (company that acquired new drug application and nothing more not a "successor" bound by injunction against application's former owner) *with Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1582, 230 USPQ 81, 93 (Fed.Cir.1986) (company that purchased facility used to manufacture infringing products was a "successor" bound by injunction against former owner), *cert. denied,* — U.S. —, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987).

We conclude that Stucki has pointed to no "evidence on which the jury could reasonably find" that Worthington was liable for patent infringement under 35 U.S.C. § 271(a). *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### 2. Inducing Infringement[2]

To be liable for RDI's infringement under 35 U.S.C. § 271(b), Worthington must have actively induced that infringement. *Orthokinetics,* 806 F.2d at 1578–79, 1 USPQ2d at 1090; *Power Lift, Inc. v. Lang Tools, Inc.,* 774 F.2d 478, 481, 227 USPQ 435, 437 (Fed.Cir.1985).

Stucki premises its "inducement" assertion on these facts: (1) In late 1979 and early 1980, as Worthington was considering acquiring Buckeye, Worthington learned that Buckeye owned 50% of RDI's stock; (2) Worthington visited RDI's corporate office and Stuart Schwam to "obtain a complete overview of RDI;" (3) Worthington was apprised of the ongoing litigation between Stucki and RDI, that RDI had admitted infringement, and that damages could be considerable should the validity of Stucki's patent be upheld; (4) after Buckeye became a subsidiary of Worthington, RDI paid its 1980 dividend to Buckeye two months early so that it would be included in the year-end consolidated financial statements of Worthington and its subsidiaries.

Stucki correctly states that under Fed.R.Civ.P. 50(a) all the foregoing facts must be accepted and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Stucki's difficulty is twofold: (1) the facts do not add up to inducement of infringement; and (2) the inferences Stucki posits are not *justifiable.* Stucki says "although no document exists which states that the Worthington officials advised RDI to continue its infringement," the evidence shows "it is an inescapable conclusion that the Worthington officials did assent to, endorse and condone continued infringement." Absent evidence of active inducement, however, Stucki's "inescapable conclusion" is mere speculation, not a justifiable inference. The district court was not obliged to make the jury engage in such speculation. *See Anderson,* 477 U.S. at 251, 106 S.Ct. at 2512. Stucki's evidence is not "evidence on which the jury could reasonably find" that Worthington had "actively" induced infringement under 35 U.S.C. § 271(b). *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### C. RICO

Stucki argues "a conspiracy is implicit" because RDI was unable to pay damages, and that "Stucki's RICO claim is based upon use of the mails and other means of interstate communication utilized by Worthington, Buckeye, Mr. Schwam and RDI to accomplish a theft and fraud." Stucki points to no evidence that Worthington siphoned money from RDI resulting in its inability to pay damages, but, continuing to rely on speculation, says, "[o]ne would hardly expect to find such advice in documents sent through the mails and available to Stucki to offer as exhibits but common sense might suggest such facts as a possibility." Common sense is not evidence, however, and speculative inferences that "might suggest" a mere "possibility" are not enough to defeat a motion for

---

**2.** Though Stucki asserts "inducement," the infringement had been ongoing for years when Worthington acquired stock in Buckeye. Hence Stucki's assertion is more properly seen as one of "failure to stop" infringement. That assertion is disposed of in the discussion of direct infringement *supra.*

directed verdict. Stucki was required to prove by at least a preponderance of the evidence that Worthington had, through a pattern of racketeering activity, caused RDI's inability to pay damages. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 491, 105 S.Ct. 3275, 3282, 87 L.Ed.2d 346 (1985); 19 U.S.C. §§ 1961(1), (5), 1962, 1964. Stucki has pointed to no evidence on which reasonable jurors could find that Worthington had violated RICO. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## II. *Damages*

Stucki's request that this court rule on its introduction of evidence of damages beyond those awarded in *RDI* is rendered moot by our affirmance of the district court's grant of the motion for directed verdict.

## CONCLUSION

Stucki has not shown that it presented evidence sufficient to support a jury verdict that Worthington did anything to render it liable for infringing Stucki's patent under 35 U.S.C. § 271, or that Worthington did anything to violate RICO. The district court properly directed a verdict for Worthington.

AFFIRMED.