ORDER
DOTY, District Judge
This matter is before the court on the motion of K mart Corporation (“K mart”) to dismiss plaintiff Susan M. Maxwell’s (“Maxwell”) complaint. Because both parties have presented materials to the court outside the pleadings, K mart’s motion may be deemed a motion for summary judgment. Based on a review of the file, record and proceedings herein, the court denies K mart’s motion to dismiss and grants the motion for summary judgment.[1]
BACKGROUND
This case concerns various systems used to connect shoes which do not have laceholes, buckles or other apertures through which a filament can be threaded to join the shoes. Maxwell is the owner of record and named inventor of United States Patent No. 4,624,-060 (“’060 patent” or “Maxwell patent”). The patent claims a “system for connecting mated pairs of shoes to prevent separation and possible mismatching when offered for sale in self-service stores.” Maxwell patent, abstract. Maxwell filed an application for a patent on October 6, 1983, and a patent was issued on November 25, 1986.
The ’060 patent describes a system that threads a filament through “fastening tabs” secured between the inner and outer soles of each shoe of a mated pair. Maxwell’s shoe connection system securely joins mated shoes together without damaging the shoes. The tabs used to attach the shoes are not visible when the shoes are worn and do not irritate the wearer. In 1985, Maxwell granted Target Stores a non-exclusive license to use the attachment system on shoes purchased for resale. Once Target began using Maxwell’s shoe connection system, other discount retailers, including the defendants, followed suit.
Maxwell filed suit alleging that defendants K mart and Melville Corporation (“Melville”), as well as others, sold shoes using attachment systems that violated the ’060 patent. Melville has an exclusive license with K mart Corporation to operate the shoe departments in all K mart stores. Melville operates the shoe departments through its Meldisco subsidiaries. Melville owns 51 percent of the common stock of Meldisco and elects three members of the board of directors. K mart owns the remaining stock and elects the fourth board member. During the term of the license, Melville, may not transfer its Meldisco stock without K mart’s approval.
Under the licensing agreement, K mart leases space in its stores to Melville for the purpose of selling shoes and related merchandise. K mart also provides certain services to Melville, including check out and return service. Melville pays rent to K mart in three ways: (1) Melville pays rent based on a fixed percentage of gross sales, subject to a minimum annual rental fee based on the square footage Melville occupies in the K mart store; (2) Melville pays an excess rental fee based on gross profits on sales exceeding a certain amount; and (3) Melville pays a fixed fee based on the relative amount of space it occupies to defray overhead costs incurred by K mart in operating the stores. K mart also derives income from the operation of the shoe departments in the form of dividends from Meldisco.[2]
Melville owns all the shoes and related merchandise in the shoe departments. Melville controls the selection, manufacturing, *1347 shipment, receiving, displaying, coding and pricing of shoes and related merchandise. Under the license agreement, however, Melville agrees to comply with K mart’s policy of matching lower prices from other stores. Melville employees staff and manage the shoe departments, although K mart employees perform the physical sale at the cash registers. Complaints and returns are also handled, at least initially, by K mart employees.
The proceeds from the shoe sales, after deduction of K mart’s fees and advances, go to Melville. Melville employees receive compensation and benefits from Melville and Melville withholds and pays all payroll taxes associated with its employees. K mart provides cash advances to Melville for payroll and limited local payments. K mart recoups the advances through deductions from Melville’s weekly statements. K mart reports income from the Melville shoe operations as license fees and rental income, not as sales revenues.
The license agreement provides that K mart accepts all applications of persons seeking employment and, upon request, makes the applications available to Melville. Melville employees must attend K mart sales meetings and adhere to K mart’s dress code and general standards of conduct. Melville employees also receive a K mart employee discount, the cost of which is divided between Melville and K mart.
K mart sells certain footwear, including toddler shoes and specialty athletic shoes, in other departments in its stores. The license agreement prevents Melville from selling these types of shoes in K mart stores. Presumably because the toddler and athletic shoes have laceholes or other apertures, there is no allegation that any of these shoes infringe the Maxwell patent.
K mart also sells a line of goods under the Jaclyn Smith trademark. K mart has the right to use the mark in connection with a line of apparel as well as accessories. At first, the Jaclyn Smith trademark was used only for apparel. K mart also has the right to sell shoes bearing the Jaclyn Smith mark. Melville, as K mart’s licensee, sells shoes under the trademark. Maxwell contends that shoes sold by Melville under the Jaclyn Smith mark use a shoe attachment system that infringes her patent.
DISCUSSION
A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the court looks to the complaint as pled. The complaint must be liberally construed and viewed in the light most favorable to the plaintiff. The court will dismiss a complaint only when it appears the plaintiff cannot prove any set of facts that supports the claim. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
Both K mart and Maxwell have presented materials to the court outside the pleadings. Thus, the motion may properly be considered a motion for summary judgment. Fed.R.Civ.P. 12(c). The court should grant summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Id. at 249, 106 S.Ct. at 2510-11.
On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. Id. at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather *1348 the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. See Anderson, 477 U.S. at 250-51, 106 S.Ct. at 2511-12. If a plaintiff fails to support an essential element of a claim, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.
1. Motion to Dismiss
In the complaint, Maxwell alleges that K mart “has infringed and continues to infringe” her patent “by selling shoes and cooperating with defendant, Melville Corporation, in the sale of shoes using the [patented] system” and by “profiting from such sales.” K mart contends that Maxwell fails to state a claim for patent infringement because she cannot show that K mart makes, uses or sells shoes attached with the accused devices in the United States. K mart’s argument goes to summary judgment, not the facial validity of the complaint. Based solely on the allegations pled in the complaint, the court cannot say that Maxwell can prove no set of facts which would entitle her to recover from K mart.
2. Motion for Summary Judgment
Maxwell contends that the court should deny summary judgment because the evidence shows that K mart sells shoes. K mart initially asserted that it “does not make, use, or sell any shoes, with or without shoe fastening systems anywhere in the U.S.” K mart has since retreated from that statement, conceding, as it must, that it sells certain shoes, including toddler shoes and specialty athletic footwear. K mart insists, however, that it does not sell any shoes connected by systems alleged to infringe the Maxwell patent. K mart contends that it is entitled to summary judgment because Maxwell has failed to show that it sells any shoes alleged to infringe the ’060 patent. The court agrees that Maxwell cannot withstand summary judgment simply by showing that K mart sells shoes. Rather, Maxwell must produce evidence sufficient to show that K mart uses, makes or sells the patented invention.
A. Direct Infringement
Section 271(a) of Title 35 of the United States Code defines direct patent infringement as the unauthorized making, using or selling of a patented invention within the United States. 35 U.S.C. § 271(a). K mart can be hable as a direct infringer under section 271(a) for infringement by Meldisco, a related company, only if the evidence reveals circumstances justifying disregard of K mart and Meldisco as distinct, separate corporations. Accord A. Stucki Co. v. Worthington Indus., Inc., 849 F.2d 593, 596 (Fed.Cir.1988). “Mere ownership of stock is not enough to pierce the corporate veil.” Id. (quotation omitted).
Maxwell has not alleged, much less proved for purposes of summary judgment, that Meldisco is the alter ego or instrumentality of K mart. While K mart owns stock in Meldisco, there is no evidence that K mart used Meldisco as an agent or instrumentality or that Meldisco was some how an alter ego of K mart, as would permit piercing of the corporate veil. Accordingly, the court holds that Maxwell has failed to offer evidence upon which a jury could hold K mart hable as a direct infringer for infringement by Meldis-eo.
B. Active Inducement of Infringement
Under certain circumstances, a defendant, although not technically making, using or selling a patented invention, may be hable for actively inducing infringement of a patent. 35 U.S.C. § 271(b).[3] A defendant induces infringement under section 271(b) “by actively and knowingly aiding and abetting another’s direct infringement.” C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc., 911 F.2d 670, 674 (Fed.Cir.1990) *1349 (citation omitted). There is no intent element to direct infringement. However, proof of actual intent to cause or encourage the acts which constitute the infringement is a necessary prerequisite to active inducement. Hewlett-Packard, Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1469 (Fed.Cir.1990).
Maxwell appears to argue that K mart induced infringement under section 271(b) by: (1) licensing its shoe departments to Melville; (2) profiting from Melville’s operation of the shoe departments; (3) owning a large amount of stock in Meldisco, the company which operates the shoe departments; (4) receiving dividends from Meldisco; and (5) permitting Melville to sell shoes under its Jaclyn Smith trademark.
Maxwell asserts that K mart has the control necessary to be an infringer. As discussed above, there is no evidence that K mart controls or dominates Meldisco. While the license agreement gives K mart certain authority over Melville, it does not give K mart control over the manufacture of shoes or the accused devices. There is no evidence that K mart exercises any control over the inventory of the shoe departments. Maxwell insists that K mart exercises control over the Melville shoe departments through the rules, regulations and policies. Maxwell fails to establish a connection, however, between K mart’s general rules and regulations and the acts which constitute the alleged infringement.
As a licensor, K mart has the ability to monitor the general nature and quality of the goods sold under its Jaclyn Smith trademark. Aside from pure speculation, Maxwell has failed to show any relation between the license of K mart’s Jaclyn Smith trademark and the alleged infringement by Meldisco and Melville. Maxwell also relies on K mart’s failure to inform the United States Patent and Trademark Office that shoes bearing the mark were sold by Melville, a related company whose use of the mark inured to K mart’s benefit. K mart’s alleged lack of candor, however, has no bearing on its intent to induce infringement.
Maxwell makes the bald assertion that Melville would heed any request by K mart to cease infringement of the Maxwell patent. The patent laws prohibit K mart from infringing or actively inducing the infringement of another. The patent laws do not impose an affirmative duty on K mart to stop the infringement of another. Maxwell has produced no evidence which tends to show that K mart intended to induce Melville’s alleged infringement of the Maxwell patent. Because there is no proof that K mart intended to cause the acts which constitute the alleged infringement, the court grants K mart’s motion for summary judgment.
Maxwell claims that she will be unfairly prejudiced if K mart is dismissed from the case. Maxwell argues that K mart’s dismissal will compromise her ability to obtain full monetary and injunctive relief. Melville makes certain payments to K mart pursuant to the license agreement. Maxwell fears that Melville will attempt to deduct the payments from its profits, thus impacting Maxwell’s damages. While the court may need to address the nature of the payments at a later date, the present record indicates that the payments represent costs associated with Melville’s operation of the shoe departments.
Maxwell also laments her inability to recover damages based on K mart’s profits. Without a showing that K mart either infringed the patented invention or actively participated in infringement, however, Maxwell is not entitled to K mart’s profits derived from Melville’s sales of the infringing shoes. Finally, Maxwell argues that K mart should not be dismissed as long as the prospect exists that K mart may seek to use the patented invention on footwear exempted from the licensing agreement. There is no allegation that those shoes, which include toddler shoes and specialty athletic shoes, infringe the Maxwell patent. K mart cannot be made a defendant in this case based on speculation that it might attempt to infringe Maxwell’s patent in the future.
CONCLUSION
The court holds that the complaint states a cognizable claim of patent infringement against K mart. The court concludes, however, that the evidence fails to raise an issue *1350 of material fact concerning whether K mart makes, uses or sells the patented invention. The evidence is also insufficient to show that K mart intended to induce the alleged infringement of Maxwell’s patent.
Accordingly, IT IS HEREBY ORDERED that summary judgment is granted in favor of K mart Corporation.

. The cross-motions for partial summary judgment brought by defendants Morse Shoe, Inc. and Melville Corporation and plaintiff Susan Maxwell are addressed in a separate order.

. K mart received $50 million in dividends for its fiscal year ending in early 1992.

. Section 271(b) provides that “Whoever actively induces infringement of a patent shall be liable as an infringer."